[993 NYS2d 470]

In the Matter of CITY OF LONG BEACH, Petitioner, v LONG BEACH PROFESSIONAL FIREFIGHTERS ASSOCIATION, LOCAL 287, Formerly Known as UNIFORMED FIREFIGHTERS ASSOCIATION, LOCAL 287, et al., Respondents.

Supreme Court, Nassau County, September 11, 2014

**APPEARANCES OF COUNSEL**

*Corey E. Klein, Corporation Counsel*, Long Beach, for petitioner.

*Louis D., Stober, Jr., LLC*, Garden City (*Louis D. Stober, Jr.* of counsel), for respondents.

## OPINION OF THE COURT

DANIEL PALMIERI, J.

The petition by the City of Long Beach pursuant to CPLR 7503 (b) to stay arbitration with respondents Brian McNamara and Long Beach Professional Firefighters Association, Local 287 (Union) before the American Arbitration Association (AAA) is granted and the arbitration is permanently stayed, without prejudice to the Union to submit the determination of City Manager Jack Schnirman to arbitration pursuant to the parties' collective bargaining agreement (CBA or agreement).[1]

The cross motion, deemed and converted herein to a cross petition, made pursuant to CPLR articles 75 and 78, to compel arbitration before AAA and for a finding that the petitioner acted arbitrarily, capriciously, and in an abuse of discretion in designating City Manager Schnirman as the hearing officer on the McNamara disciplinary matter, disqualifying him from acting in that capacity, and nullifying any hearing he has held, is denied in its entirety.

This matter stems from a disciplinary charge and specifications brought by the Commissioner of the Long Beach Fire Department, Scott Kemins, against respondent McNamara, a paid professional firefighter and Union member. This was done by way of notice/letter dated June 2, 2014.

The charge was misconduct, based on acts alleged to have taken place on May 10, 2014. McNamara was accused of escalating a verbal dispute with another member of the Department while under the influence of alcohol, and striking the other member in the face. There are five specifications based on that charge. The first, second and fifth allege violations of the Code of Ordinances for the City, the third alleges a violation of the City's Workplace Violence Prevention Act (Labor Law § 27-b) policy, and the fourth alleges insubordination. The notice also informed McNamara that he was suspended without pay.

By way of background, and although ultimately immaterial to the court's determination, the Long Beach Fire Department is composed of both professional and volunteer members, and petitioner and respondents appear to agree that the relationship between these two groups has been marked by rivalry and

---

1. It is undisputed that the contract period was from July 1, 2004 through June 20, 2010, and that there is no successor agreement in place, but by operation of law all terms remain in effect until such successor agreement is made. (*See* Civil Service Law § 209-a [1] [e].)

conflict. The incident that led to the charge against McNamara involved a physical altercation between him and volunteer members of the Department.

As a Union member, McNamara's case is governed by the CBA. Where charges and specifications are brought, it provides, in relevant part, for the following at article XXIV, section 2:

> "The service of charges and specifications shall be brought by a superior officer . . . and shall be considered the initiation of disciplinary proceedings.

> "The City Manager shall conduct a hearing and consider the charges de novo and make a determination of guilt/innocence and penalty. If the City Manager does not conduct said hearing the City and Association shall mutually agree upon a designee or shall refer the matter to AAA arbitration. The rules of evidence shall not apply to exclude testimony from the hearing.

> "If no determination has been made within a sixty (60) day period from the close of the hearing or from any agreed upon extension thereof, the charges shall be deemed dismissed.

> "The Association may submit the determination of the City Manager to final and binding arbitration in accordance with the Rules of the New York State Public Employment Relations Board (PERB) for Voluntary Arbitration (Grievance Arbitration), within Fifteen (15) days of the determination. The arbitrator shall review the record of the hearing and to decide if substantial evidence supports the determination and penalty of the City Manager.

> "If no determination as to guilt has been made within a sixty (60) day period from the close of the arbitration or from any agreed upon extension thereof, the charges shall be deemed dismissed."

By way of correspondence to McNamara dated June 27, 2014, City Manager Jack Schnirman scheduled a hearing on the matter, to be held on July 17, 2014 in the City Manager's office. The letter was copied to the Union's president, to Commissioner Kemins, and to the City's Corporation Counsel, who would be representing the Fire Department. However, the hearing was not commenced until July 31, 2014, by which time there had been other developments.

On July 21, the Fire Department filed a motion in limine with Schnirman seeking exclusion of certain items into evidence. This was denied on July 22. On July 23, 2014, the Union

served the City with a demand for arbitration before AAA. Upon receipt of the demand that same day, the Assistant Corporation Counsel assigned to the case wrote to AAA and asked that AAA reject the Union's demand. However, and without addressing the City's objection, on July 29 AAA corresponded with the parties instructing them to provide their preferences from a list of proposed arbitrators. According to the City, its Assistant Corporation Counsel called the AAA contact person to ask why AAA was choosing to proceed in the face of the City's objection, and was told that she had not read the City's correspondence.

As noted, Schnirman began the hearing on July 31, which continued on August 5, and was scheduled to resume on August 13. In the interim, McNamara filed a notice of claim against the City stemming from the incident at issue, and AAA denied the City's request to reject the arbitration on August 6. The instant proceeding was commenced on August 8, 2014.

In essence, the City asks the court to enforce the CBA and to permanently stay the arbitration before AAA as inconsistent with that agreement. In its cross motion, which the court here converts to a cross petition (*see* CPLR 103 [c]), the Union too asks for such enforcement, but reads the CBA as permitting either party to demand arbitration. It also argues that Schnirman should not serve as a hearing officer because his objectivity has been compromised by, among other things, advance information about the case, prior dealings with McNamara in the latter's role as a Union negotiator, and Schnirman's role as a potential defendant in any lawsuit brought by McNamara.

In the public sector context, whether or not a grievance is arbitrable calls on a court to first determine whether there is any statutory, constitutional or public policy prohibition against arbitration, and, if there is none, whether the parties agreed to arbitrate the particular dispute through an examination of the CBA. (*Matter of New York City Tr. Auth. v Transport Workers Union of Greater N.Y., Local 100*, 117 AD3d 955 [2d Dept 2014]; *Matter of Board of Educ. of Yorktown Cent. Sch. Dist. v Yorktown Congress of Teachers*, 98 AD3d 665 [2d Dept 2012]; *Matter of Village of Johnson City [Johnson City Firefighters Assn., Local 921 IAFF]*, 75 AD3d 817 [3d Dept 2010].)[2]

---

**2.** Although disciplinary matters and grievances are separately handled under this CBA, the court finds that the foregoing authority is fully applicable here, as arbitrability of a particular employee-employee dispute is the issue placed before it, as was the case in the cited decisions.

In this case the City has not identified a statutory, constitutional or public policy basis for prohibiting arbitration, and so the task is to decide whether the CBA requires the parties to go to arbitration in this particular case. The court concludes that it does not, and thus the petition should be granted and arbitration stayed.

Initially, the court notes that it is not bound by the rulings of other justices or arbitrators on other cases, cited by the Union in support of its position regarding the meaning of the CBA provisions set forth above, and to the extent they vary from what is decided here the court respectfully disagrees. Rather, this court finds the language of the CBA to be unambiguous and in the City's favor.

The CBA provides that it is the City Manager in the first instance who shall hear the disciplinary matter. The Union's position that it must agree to such a hearing and if it does not can unilaterally demand AAA arbitration is untenable. As set forth above, "The City Manager shall conduct a hearing and consider the charges de novo and make a determination of guilt/innocence and penalty." There is nothing to indicate that consent of the Union is required.

Arbitration can be reached only if the City Manager does not conduct the hearing. Specifically, the CBA provides that if the City Manager does not do so, there shall be an agreement between the City and Union to designate a substitute for the City Manager, "or" the parties shall refer the matter to arbitration. The "or" is found between the phrases referring to designation of a substitute and arbitration, but neither possibility comes into play unless the City Manager does not hold the hearing. Without that predicate, there simply is no language indicating that either party has the right to insist on one of these two alternatives in lieu of a hearing by the City Manager. In sum, it is only "if" the City Manager does not hold a hearing that the parties "mutually" can agree on a substitute designee, or can arbitrate. Here, however, the City Manager decided to and did in fact proceed with the hearing, and thus there was no need to select a substitute, nor a basis for referring the matter to arbitration. Of course, the City could have consented to arbitration in lieu of the City Manager's hearing, but clearly it did not, and was not obligated to do so under the CBA.

Whatever doubt exists about the Union's inability to proceed to arbitration unilaterally at this stage of the proceedings is erased by the provision that defines the parties' rights after the

City Manager determines the disciplinary matter. At that point, the CBA expressly provides that the Union may arbitrate before PERB what the City Manager decides, without referencing a mutual decision or indicating in any way that the City must agree to PERB arbitration. It is clearly intended as a final right of review given only to the Union. Therefore, where the parties intended to give the Union the right to proceed on its own, they made express provision for it. Accordingly, reading the subject section as a whole, as the court should (see County of Westchester v Mahoney, 56 NY2d 756 [1982]), it agrees with the City that the CBA requires that the McNamara disciplinary hearing should proceed before the City Manager, because the City Manager has decided to hold that hearing. The CBA forecloses the right of the Union to seek arbitration of the dispute in the first instance, but rather grants it a right of review of the City Manager's determination before PERB.

The court has examined the Union's other contentions regarding Schnirman's alleged bias or taint, and finds them unpersuasive and indeed contrary to the CBA. The Union agreed by signing that agreement that the City Manager would have the power to hear a disciplinary matter brought against a city employee by a "superior officer," obviously on behalf of the Fire Department—i.e., the employer. The CBA thus provides that at this first stage of the disciplinary process both the accuser (in this case, the Fire Commissioner) and the deciding official (the City's Chief Executive Officer) would come from the employer's side.

Under these circumstances there can be no expectation under the CBA that in order for him to hear the disciplinary matter and to rule, the City Manager should be able to demonstrate the same kind of neutrality as an arbitrator who had no ties to either employer or employee. To the extent the Union ultimately concludes that the City Manager's determination and any punishment based thereon is not supported by substantial evidence in the record, these issues can be placed before the PERB arbitrator, in accord with the CBA. That is what the Union agreed to, and it cannot now attempt to rewrite the CBA by insisting that the City Manager be as disinterested as a neutral arbitrator.

The key case the Union cites in support of its position, Matter of Uniformed Firefighters Assn., Local 287 v City of Long Beach (307 AD2d 365 [2d Dept 2003]), is inapposite precisely because it dealt with an arbitrator, and not with the City Manager, the employer. In any event, upon a review of the record of this

proceeding the court finds that the allegations of bias on the part of Schnirman are based on little more than surmise and conjecture; they ultimately are founded on no more than what he did in his role as City Manager, and do not amount to the showings of actual bias or the appearance of bias on his part that would serve as a basis for disqualifying him, even if he were serving as a neutral arbitrator. (*See Matter of County of Niagara v Bania*, 6 AD3d 1223 [4th Dept 2004]; *see also Matter of Denaro v Cruz*, 115 AD3d 742 [2d Dept 2014].) Importantly, he was not personally involved in the incident itself nor in the preparation of the charges against McNamara, which might serve as a predicate for disqualification. (*Cf. Matter of Baker v Poughkeepsie City School Dist.*, 18 NY3d 714 [2012].)

The foregoing disposes of the Union's related arguments that (1) because a report made under the City's Workplace Violence Prevention Act policy was disseminated and noted to exist in the motion in limine submitted to Schnirman, and he is to adopt or refuse to adopt the report, he is placed in a conflict situation because one specification alleges a violation of the policy, and (2) that the motion in limine provided him with information that might lead him to pre-judge the case. Again, since he was not involved in the preparation of any of these materials nor in the making of the charge and specifications against McNamara, he is not disqualified, even assuming he read everything. (*Baker.*)

The Union further contends that Schnirman may be called as a witness to testify as to what actions he took in response to a single email from McNamara reporting that he, McNamara, had been the victim of an assault. The court finds this to be without merit, as Schnirman in his affidavit does not deny that he received it, but did no more than review it as a set of allegations. If the Union is dissatisfied with this sworn response it may take it up with the PERB arbitrator at the conclusion of the disciplinary proceedings, but there is nothing in the CBA or the case law cited above that would justify removing Schnirman from his role as a disciplinary hearing officer because he read this email. In accord with the discussion set forth above, and in view of the absence of any proof that he took any action against McNamara as a result of that email prior to the hearing, he is not disqualified as the hearing officer under the CBA.

The court has examined the Union's remaining contentions and finds them to be without merit.

Accordingly, it is adjudged that the petition is granted and the arbitration before the AAA is permanently stayed, without prej-

udice to the Union to proceed to arbitration before PERB upon completion of the City Manager's hearing and determination.

It is further ordered that the cross motion is converted to a cross petition, and it is adjudged that the cross petition is denied in its entirety.

Any requests for relief not specifically addressed are denied.